[Criminal No. 929. Filed November 23, 1942.]

[130 Pac. (2d) 1037.]

THE STATE OF ARIZONA, Appellant, v. BUCK LE NOIR, Appellee.

58

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Appellant.

Mr. V. L. Hash, for Appellee.

ROSS, J.—Buck Le Noir was informed against by the county attorney of Maricopa county, in three counts, for (1) permitting to be played, in a gambling house under his management, supervision and control, a game of craps, for money, checks and credits, such game being played with dice; (2) for conducting a banking game, and (3) for participating in a game of craps, played with dice, for money, checks, etc.

On arraignment he pleaded not guilty. Thereafter the county attorney dismissed as to Count 2. Later the defendant withdrew his plea of not guilty, and presented his motion to quash Counts 1 and 3, upon the ground that the facts alleged do not constitute a public offense. This motion was granted and the state has appealed therefrom. Appellant takes the position that the information does state facts showing the commission of a public offense by appellee and that, therefore, the ruling of the court was erroneous.

Counts 1 and 3 are drawn under sections 43–2701 and 43–2702, Arizona Code 1939. Specifically the act charged in both Counts is that defendant, at the time and place alleged, played and permitted to be played, and participated in the game of craps, for money, checks and credits, a game similar to those enumerated in the statute.

Craps is a game of chance played with two dice. It is not named in the statute as forbidden. However, games of chance played with dice, for money, etc., under whatever name, are specifically forbidden. The statute (section 43–2701) reads:

"43–2701. *Conducting gaming—Participating therein —Penalty.*—Every person who shall deal, carry on, or open, or cause to be opened, or who shall conduct, either as owner, proprietor or employee, whether for hire or not, any game of faro, monte, roulette, lasquenet, rouge et noir, rondo, vingt-un, or twenty-one, poker, stud poker, draw poker, bluff, fan tan, thaw, seven and one-half, chuck-a-luck, blackjack, 'panginki,' or any similar game whatsoever, played with cards, dice, or any other device, and every slot machine, punchboard, or machine of like character, whether the same be played for money, checks, credits or any other representative of value within the state of Arizona; and every person who shall participate in any of the above-enumerated games dealt, carried on or opened or caused to be opened by any other person in the state of Arizona, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than one hundred dollars ($100), nor more than three hundred dollars ($300), or by imprisonment for not more than six (6) months, or by both such fine and imprisonment."

The next section reads:

"43–2702. *Owner, lessee, and manager liable.*—If any proprietor, owner, or part owner, lessee, manager or any person having management, supervision, or control, temporary or permanent, of any gambling-house or other resort maintained for gambling or of

any building, shall permit any of the games mentioned in the preceding section to be played in such place, he shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as provided in the preceding section."

The charges in the information which defendant claims do not state a public offense, omitting the formal parts thereof, are as follows:

"Count 1. . . . The said Buck Le Noir on or about the 20th day of January, 1942, . . . being then and there a person having management, supervision and control of a certain building then and there maintained for the purpose of gambling, to wit: . . . did then and there willfully and unlawfully permit to be played in said gambling house a certain gambling game, to wit: craps, which said game was then and there played for money, checks and credits, and which said game was and is a game played with dice and which said game is and was similar to the games enumerated in section 43–2701, Arizona Code Annotated, 1939."

"Count 3. . . . That the said Buck Le Noir, on or about the 20th day of January, 1942, at and in the County of Maricopa, State of Arizona, did then and there willfully and unlawfully participate in, as participant, a game commonly known as craps, a game played with dice, for money, checks, credits and other representatives of value, and the said game of craps being then and there a game similar to the games enumerated in section 43–2701, Arizona Code Annotated, 1939."

■ It seems to us that Count 1, in apt language, charges the offense denounced in section 43–2702. In it defendant is described as a person having the management, supervision and control of a building maintained for the purpose of gambling, in which said building, on the date mentioned, he willfully and unlawfully permitted to be played a game of craps, for money, checks and credits.

■ The question is, is *craps,* as defined, "similar" to the games specifically enumerated as forbidden and in what respect must the similarity exist. The element of chance must, of course, be present and the game must be played with one of the machines or instruments or devices or with cards or dice, as named, and be for something of value. Craps is similar to the games specifically forbidden, in that it is a game of chance and may be played for things of value and is always played with dice. A betting game played with dice, for money, etc., is specifically denounced by the statute.

The game of craps is certainly included in the phrase "or any similar game whatsoever" (section 43–2701) for it is very similar to the game of chuck-a-luck, which Webster defines as:

"A banking game played with three dice, the players betting that a certain number will appear on one or more of the dice, or that the sum of the three dice will make a certain number, or that all three dice will turn up alike."

Chuck-a-luck and craps are played with dice. Chuck-a-luck is enumerated as one of the prohibited games, and craps, being similar to it, likewise is prohibited. We can see no escape from the conclusion that the legislative intent was that all persons who deal, carry on, or open, or cause to be opened, or conduct any of the enumerated games, including games played with dice, for money, checks, credits, etc., fall within the prohibition of the statute against gambling. The law is directed against the keeper, owner or operator of such games and his employees. We think the whole context of the law indicates the above as the legislative intent. There appears to be no reason for exempting the game called "craps," a game played with dice, from the condemnation of the law while including other gambling games played with dice as within the

intent of the law. The question is whether the gambler has outwitted the lawmaker and invented a gambling game not within the language or intent of the law and therefore free from its condemnation. We cannot think so.

We think Count 1 states the public offense described and denounced in section 43–2702 and that the holding by the trial court to the contrary is erroneous.

By Count 3 defendant is charged with being a participant in his own game of craps. Under section 43–2701, a person who participates in any of the enumerated games described or named in said section, when "dealt, carried on or opened or caused to be opened by any other person . . . shall be guilty of a misdemeanor," etc. The information fails to show that the game defendant is alleged to have been engaged in was "dealt," etc., "by any other person" than himself. In other words, it cannot be determined from the language employed whether he was playing against his own game or the game of someone else. We think the trial court's ruling on this Count was correct.

The judgment of the lower court is reversed and the case remanded for further proceedings in accordance with this opinion.

LOCKWOOD, C. J., and McALISTER, J., concur.